UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

**CLEVELAND SHAIN,**
       **Plaintiff and Counterclaim Defendant,**

    v.                                                   Case No. 15-C-1137

**TAMI ZINGRE,**
       **Defendant and Counterclaimant.**

_____

## DECISION AND ORDER

This case involves a property dispute between former romantic partners. Before me now is the defendant and counterclaim plaintiff's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

For most of his life, Cleveland "Cleve" Shain lived in Coal City, Illinois, a town of about 2,500 people. He worked for, and eventually owned, a carpet-laying business, and he later owned and operated an auto salvage yard and an LP gas business. He was married to his wife, Linda, for 51 years, and the couple had children. In preparing for retirement, Cleve and Linda acquired several residential rental properties in and around Coal City. Cleve managed the properties through a limited liability company called G.R.J.M., LLC. When Cleve retired, the rental income from the properties allowed the couple to maintain a modest lifestyle.

On March 22, 2011, when Cleve was 69 years old, Linda passed away. Following Linda's death, Cleve was grief-stricken and prescribed medication for depression.

In approximately July 2011, Cleve met and started dating Tami Zingre, who at the time was a close friend of one of his daughters. Tami was 55 years old, had children of

1

her own, and was the Village Clerk of Diamond, Illinois. She had worked for the village in some capacity for about 28 years. When she met Cleve, Tami owned and lived in a home located at 675 Laura Lane in Diamond, which she had purchased in 1996. Shortly after Cleve and Tami began dating, Tami purchased a house located at 715 Laura Lane in Diamond and began occupying that house as her primary residence.

In December 2011, Cleve and Tami started cohabitating in Tami's house at 715 Laura Lane. Around the same time, Cleve asked Tami to marry him, and she accepted his proposal, along with an engagement ring he gave her. Soon after the couple became engaged, Cleve asked his attorney to draft a new will, which he intended to sign after the marriage occurred. Under the new will, Tami was to receive 50% of Cleve's assets upon his death, including his interest in G.R.J.M., LLC.

After the engagement, Cleve personally made improvements to the home at 715 Laura Lane, where the couple was living. Although the parties dispute the extent of the work Cleve performed, it generally consisted of improvements such as remodeling a bathroom and replacing doors.

Cleve and Tami's engagement lasted for several years. During this time, Cleve made it known to Tami that he was ready to get married at any time by a justice of the peace. He also paid for some of Tami's personal expenses and some of her children's expenses. In 2012, Cleve made Tami a joint owner of his checking account. He states that he did this as a precaution in case he became unable to care for himself and needed someone to manage his financial affairs.

While they were engaged, Tami expressed interest in moving away from Illinois. She looked for homes in Michigan and Wisconsin. Eventually, Tami found a house she liked in Campbellsport, Wisconsin, and persuaded Cleve to purchase the home so that it

could become their primary residence. Cleve purchased the property in November 2012. The deed to the property lists Cleve and Tami as joint tenants with rights of survivorship. Cleve alleges that Tami had her own attorney, John Gallo, prepare the deed in this way, and that he would have preferred to have the home titled in both of their names as tenants in common.

When Cleve purchased the Wisconsin home, Tami was still employed by the Village of Diamond and did not yet qualify for a full pension. According to Tami, Cleve wanted her to immediately retire so the couple could permanently move to Wisconsin but she was reluctant to retire without the financial security of a full pension. Tami states that Cleve assured her that if she retired early he would take care of her financially. According to Cleve, however, he did not pressure Tami to retire. Instead, he contends, Tami was having performance issues at work and wanted to retire immediately and move to Wisconsin. Tami retired from her employment with the village on May 31, 2013.

In mid-May 2013, Cleve sold his own home in Coal City in anticipation of moving to Wisconsin. The couple moved into the Wisconsin home in mid-June 2013. A short time later, Cleve decided to give Tami a 50% interest in the LLC that owned the Coal City rental properties. According to Tami, he made this decision because he was worried that, in the event of his death, his adult children might challenge Tami's finances. She also claims that Cleve did this to replace the income that Tami lost when she decided to retire early. According to Cleve, he gave Tami an interest in the LLC as a gift that was conditioned on her marrying him and caring for him as he aged and his health declined.

John Gallo prepared the documents that were used to transfer a 50% interest in the LLC to Tami. Cleve contends that this was Tami's personal attorney and that he was acting in her interest only. Attorney Gallo prepared an assignment of a membership

3

interest to Tami, amended articles of incorporation for the LLC, and an operating agreement for the LLC. The parties executed these documents effective August 1, 2013. As of that date, the LLC owned approximately 15 separate parcels of residential real estate in and around Coal City that produced rental income. According to Cleve, Tami promised that if she ever left him she would return her interest in these properties to him. Tami denies this and claims that Cleve gifted her an interest in the properties to replace her salary as the Village Clerk and to protect her in the event that he passed away.

In May 2014, Cleve told Tami that he wanted to dissolve the LLC and divide its assets between the two of them, with Tami to receive six of the properties in her name. Cleve states that he wanted to dissolve the LLC to simplify the paperwork involved in owning the properties. Thereafter, Cleve and Tami, as members of the LLC, executed quitclaim deeds for the properties. Tami received six properties in her name, and Cleve received the remaining nine in his name. According to Tami, Cleve gave her these six properties because he thought that the rental income from them would approximately replace the salary that she had earned as the Clerk of the Village of Diamond.

Tami opened a bank account at an Illinois bank specifically for the purpose of managing her six rental properties. She deposited all of the rents she received from these properties in that account and has not commingled the rents with her other funds. According to Tami, she never used the rents she collected on the six rental properties to pay expenses for her other properties, *i.e.*, her two houses on Laura Lane in Diamond and a house that she would eventually purchase in Newark, Illinois (discussed below).

While the parties were living in Wisconsin, Tami's mother became sick. Soon after the LLC was dissolved, Cleve and Tami decided to move back to Illinois, so that Tami could be closer to her mother. In anticipation of moving back to Illinois, the parties listed

4

the Wisconsin home for sale. The parties agreed that once they found a home that they liked in Illinois, Tami would obtain financing to purchase it, which she would then pay off using the proceeds from the sale of the Wisconsin home.

In June 2015, Tami found a home in Newark, Illinois that she wanted to purchase. According to Cleve, while he was still thinking about whether he wanted to live in that house, Tami entered into a contract to purchase it in her own name and without his consent. Tami used her six rental properties as collateral to secure financing for the Newark home. According to Tami, she and Cleve agreed that she would purchase the house in her name only to protect her interest in the home in the event that Cleve died and his children decided to challenge her interest in the home. She also contends that Cleve agreed that Tami could use her rental properties to secure the loan.

The parties dispute what happened next. According to Cleve, after Tami closed on the Newark house, she began moving furnishings to that house from the Wisconsin house and told Cleve that she intended to live in the Newark house without him. Cleve contends that Tami told him that if their relationship was to continue at all, it would be as friends and not as romantic partners. He states that they continued to talk by phone for the next two weeks and that he brought her a few of her belongings that she had left in the Wisconsin home. However, in early August 2015, Cleve decided that Tami had taken advantage of him in the vulnerable state he was in after Linda's death. He states that he was disgusted with her and told her to never call him again.

Tami denies telling Cleve that she wanted to be just friends and claims that it was Cleve who ended the relationship. According to her, shortly before she closed on the Newark house, he told her that he did not want to leave Wisconsin and intended to stay in the house that they had purchased there. Tami states that, at this point, the couple's

5

relationship became rocky, and that in July 2015 Cleve told her to never contact him again.

Since the couple's relationship ended in mid-2015, Cleve has continued to live at the couple's Wisconsin home, and Tami has continued to live in Illinois. Cleve has paid for all expenses associated with the Wisconsin home, and Tami has paid for all expenses associated with her two homes in Diamond and her home in Newark. Tami contends that she has also paid all expenses associated with the six rental properties she received from the LLC.

Cleve commenced this action in September 2015 to reclaim the six rental properties that he gifted to Tami and to terminate Tami's interest in the Wisconsin home. He also contends that he is entitled to recoup the value of the other gifts that he made to her during their engagement, including the home-improvement work he performed on her home and the gifts he made to her children. At the time Cleve filed the complaint, he was domiciled in Wisconsin, and Tami was domiciled in Illinois, and thus federal jurisdiction is proper under 28 U.S.C. § 1332. Tami has filed a counterclaim against Cleve for partition of the Wisconsin property.

While this suit was pending, Cleve recorded *lis pendens* on both of Tami's Laura Lane properties and on her Newark property. After he did this, Tami amended her counterclaim to allege a claim against Cleve for slander of title. Tami alleges that this suit concerns only the Wisconsin property and the six Coal City rental properties, and that therefore it was improper for Cleve to have recorded *lis pendens* on her other properties. Tami alleges that, because of the *lis pendens*, she has been unable to obtain home-equity loans on the properties. She also contends that she has been trying to sell the Newark

6

property, but that potential buyers have refused to purchase it because of the *lis pendens*. Tami now moves for summary judgment.

## II. DISCUSSION

Cleve asserts five legal theories in support of his claim that he is entitled to recover the six rental properties and terminate Tami's interest in the Wisconsin home, as well as recoup the value of the other gifts he made to her during their engagement. First, he contends that these were all conditional gifts made in contemplation of marriage and that he is entitled to recover the gifts now that the marriage is off. Second, he contends that Tami obtained these gifts through undue influence. Third, he contends that Tami obtained these gifts through breach of a duty she owed to him because of the parties' relationship of trust and confidence. Fourth, he contends that Tami engaged in "promissory fraud," *i.e.*, that she promised to marry him while knowing that she would never follow through on that promise. Finally, Cleve contends that allowing Tami to retain the gifts that he gave to her during the engagement would result in unjust enrichment. Tami moves for summary judgment on all of these claims. In addition, she seeks an order requiring Cleve to discharge the *lis pendens* on the two Laura Lane properties and on the Newark property.

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

In this case, with one exception, neither party raises an issue concerning choice of law. Therefore, for the most part I will apply the substantive law of Wisconsin, the

forum state. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). However, as discussed below, Tami raises an issue of contract interpretation involving the amended operating agreement for the LLC. This agreement states that it is governed by Illinois law, and Tami contends that therefore Illinois law applies to that agreement. Cleve does not dispute Tami's choice-of-law argument, and therefore I will apply Illinois law when interpreting the amended operating agreement. Moreover, I will apply Illinois law to Tami's request for an order discharging the *lis pendens* on her Illinois properties.

## A. Gifts in Contemplation of Marriage

Cleve first contends that the gifts he made to Tami during their engagement were gifts in contemplation of marriage. Wisconsin law recognizes a cause of action for return of a conditional gift. *See Conway v. Town of Grand Chute*, 155 N.W. 953, 954 (Wis. 1916); *Brown v. Thomas*, 127 Wis. 2d 318, 327 (Ct. App. 1985), *disapproved of on other grounds by Koestler v. Pollard*, 162 Wis. 2d 797, n.4 (1991). Such a gift is one that is conditioned on the performance of some act by the donee; if the condition is not fulfilled, the donor may recover the gift. *Brown*, 127 Wis. 2d at 327. The Wisconsin courts have determined that the condition of marriage is like any other condition, and that if a donor gives the donee a gift on the condition of marriage, he or she may recover the gift if the marriage does not occur. *Id.* at 326–27.

Tami does not dispute that a reasonable jury could find that Cleve granted her a 50% interest in the LLC, and agreed to have the Wisconsin home titled in both of their names, on the condition that she marry him. Instead, she contends that an integration clause found in the amended operating agreement for the LLC bars any action for return of the properties, and that in any event a claim for recovery of a gift in contemplation of

8

marriage is barred by Wisconsin's "heart balm" statute, Wis. Stat. § 768.01. However, as explained below, both arguments fail.

First, Tami points to the integration clause in the amended operating agreement that she and Cleve signed at the same time that Cleve assigned a 50% interest in the LLC to her. The clause states:

> This Operating Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

(Zingre Aff. Ex. C at § 17.15.) Tami contends that this clause bars Cleve's claim that he granted her an interest in the six rental properties as a gift in contemplation of marriage.[1] However, the subject matter of the integration clause is the LLC operating agreement, which governs the operation of the LLC and says nothing about how Tami obtained her ownership interest in the LLC. Rather, Tami obtained her ownership interest when Cleve executed a separate document—an "assignment of membership interest"—which assigned 50% of Cleve's interest in the LLC to her. (Zingre Aff. Ex. A.) Under Illinois law, "the scope of [an integration clause] does not extend infinitely to any and all dealings that might have occurred between the parties." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 891 N.E.2d 1, 19 (Ill. Ct. App. 2007). Instead, "[e]vidence of an extrinsic agreement may be admissible if it is 'so far a separate and distinct matter as to be capable

---

[1] I do not understand Tami to be arguing that the integration clause in the LLC operating agreement bars Cleve's claim that Tami's interest in the Wisconsin home was a gift in contemplation of marriage. In any event, the LLC operating agreement clearly does not apply to the purchase of the Wisconsin home, as that home was not part of the LLC's business.

9

of existence as an independent legal act.'" *Id.* Cleve's gift to Tami of the 50% membership interest was an independent legal act. Although the gift occurred at the same time as execution of the amended operating agreement, the operating agreement does not purport to govern the assignment itself.[2] Accordingly, the integration clause does not prevent Cleve from presenting evidence that his gift was conditioned on the parties' marriage.

Next, Tami contends that Cleve's claim for recovery of a gift made in contemplation of marriage is barred by Wisconsin's "heart balm" statute, Wis. Stat. § 768.01. As is relevant here, this statute abolishes "[a]ll causes of action for breach of contract to marry." *Id.* However, Cleve's action for recovery of gifts made in contemplation of marriage is not subject to the heart-balm statute. The Wisconsin courts have held that the statute abolishes "only the common law suit for damages based on the emotional harm caused by the breach [of a contract to marry]." *Lambert v. State*, 73 Wis. 2d 590, 600 (1976), *superseded on other grounds by statute as recognized by State v. Syed Tagi Shah*, 134 Wis. 2d 246, 251 n.4 (1986). Actions seeking recovery of gifts made in contemplation of marriage are still allowed. *Brown*, 127 Wis. 2d at 321–27; 38A C.J.S. *Gifts* § 41 (Westlaw 2018) ("The existence of a heart balm statute does not affect common law principles governing a gift to a fiance made on the condition of marriage where such condition is broken by the donee. The law of conditional gifts creates a cause of action distinct from a breach of promise to marry suits." (citing Wisconsin law)). Accordingly, Cleve may

---

[2] The assignment states that Tami's receiving her membership interest was conditioned on her agreeing to the terms stated in the operating agreement. However, this does not make the assignment part of the operating agreement. Thus, although the assignment and the agreement are related to each other, they are still independent legal acts.

10

proceed to trial on his claim that his gifts to Tami of the LLC interest[3] and the interest in the Wisconsin home were gifts in contemplation of marriage.

However, Tami is entitled to summary judgment on Cleve's claim that the miscellaneous other gifts that he bestowed on her during their long engagement—such as home-improvement work and gifts to her children—were gifts in contemplation of marriage. Cleve has presented no evidence that, at the time he made these gifts, he expected Tami to return them if the marriage did not occur. Rather, Cleve testified that he performed the home-improvement work on Tami's Laura Lane house because he expected to live in that house with her. (Shain Dep. at 145:15–146:1.) And he did live in that house with her after their engagement and before they decided to move to Wisconsin. (Pl. Prop. Findings of Fact ("PFOF") ¶ 8; Def. PFOF ¶ 16.) Moreover, it is clear that the home-improvement work and the gifts to Tami's children were of the nature of ordinary gifts that romantic partners will often make to each other over the course of a long relationship. Courts recognize that miscellaneous gifts such as these are absolute gifts and are not recoverable when the romance ends. *Brown*, 127 Wis. 2d at 327 n.3 (recognizing that "miscellaneous gifts made by the spurned suitor" are "personal gratuities upon which the law imposes no condition of return and are more nearly akin to a Christmas present"); *Gikas v. Nicholis*, 71 A.2d 785, 786 (N.H. 1950) (same).

---

[3] Although the LLC has been dissolved, Tami concedes that her right to the six rental properties depends on her having previously been a member of the LLC. (Br. in Supp. At 10, ECF No. 98.) She does not argue that the LLC's subsequently deeding the properties to her removed them from the scope of Cleve's claim for recovery of gifts made in contemplation of marriage. Accordingly, I do not consider whether any such argument would be successful.

**B.     Undue Influence/Breach of Fiduciary Duty/Promissory Fraud**

I discuss Cleve's next three legal theories together because they are related. Cleve contends that Tami obtained her interests in the LLC, the six rental properties, and the Wisconsin home through undue influence, that she obtained these gifts by breaching a fiduciary duty she owed to him due to their relationship of trust and confidence, and that Tami committed promissory fraud by promising to marry him when she had no present intent of doing so.

I start with Cleve's clam for promissory fraud, which he contends is recognized in Wisconsin and allows recovery where promises are made on which a person has a right to rely and at the time of making them the promisor has no present intent to perform them. *See Alropa Corp. v. Flatley*, 277 N.W. 108, 110 (Wis. 1938). Here, Cleve contends that, at the time Tami agreed to marry him, she had no intent of actually doing so. However, Cleve has pointed to no evidence in the record that supports this contention. Instead, in his brief, he simply cites his entire statement of facts and asserts in conclusory fashion that "there is ample evidence" of promissory fraud. (Br. in Opp. at 15, ECF No. 105.) But the fact statement does not propose as a fact that Tami never intended to marry Cleve, and thus it cites no evidence to support that fact. The fact statement does propose that, after the relationship ended, Cleve began to think that Tami never intended to marry him (Pl. PFOF ¶44), but of course Cleve's personal opinion on the matter is not evidence that Tami never intended to marry him. Cleve does not identify the actions of Tami that caused him to form this opinion, other than her ultimately calling off the engagement, which by itself is not sufficient to prove that she never intended to marry him. Accordingly, Tami is entitled to summary judgment on Cleve's claim for promissory fraud.

I next turn to Cleve's claims of undue influence and breach of fiduciary duty. These claims are related in that they both depend on Cleve's proving that Tami engaged in some form of improper behavior that caused him to transfer property to her. Here, however, Cleve points to no behavior by Tami that could reasonably be deemed improper or a breach of any fiduciary duty that she might have owed to him. Cleve generally asserts that he was grieving over the death of his wife at the time he met Tami, and that this made him susceptible to undue influence. I will assume for the moment that this is true. *But see Matter of Dejmal's Estate*, 95 Wis.2d 141, 158 (1980) (finding that grief over death of loved one did not demonstrate a lack of mental health that would make person susceptible to undue influence). Even so, Cleve points to no evidence suggesting that Tami exploited that susceptibility by exerting some form of improper influence on him. There is no evidence in the record suggesting that Tami was not genuinely romantically interested in him when they met, and there is no evidence suggesting that their ensuing four-year relationship was anything but genuine. If the romance was genuine, then Tami's influence on Cleve during the romance could not be deemed improper, for in every long-term relationship one party will have some degree of influence on the decisions of the other. *Cf. McOuatt v. McOuatt*, 69 N.E.2d 806, 808 (Mass. 1946) ("A wife has the right to discuss with her husband the advisability of giving her an interest in his property, and to request and, if necessary, to persuade him to make some provision for her benefit.").

Moreover, in this case, the parties were cohabitating and intended to live together over the long run, so it was undoubtedly proper for Tami to influence Cleve's decision to purchase a home in Wisconsin and title it in both of their names. As to the transfer of the interest in the LLC and the six rental properties, there is no evidence in the record suggesting that Tami exerted any substantial influence on Cleve with respect to these

matters. Rather, it appears that Cleve was the one who proposed the transfer. Cleve does claim that Tami "deceived and manipulated" him into gifting her this property (Shain Decl. ¶ 17), but he does not identify any specific acts of deceit or manipulation. Presumably, he means that the deceit consisted of her promising to marry him, but as I have already explained, there is no evidence in the record to support Cleve's claim that Tami lied when she said that she would marry him. Nor is there evidence in the record suggesting that at the time Cleve transferred an interest in the LLC to Tami, or caused the LLC to deed the six properties to her individually, she had decided that she would never marry him.

Cleve also points to his deposition testimony in which he describes Tami as "controlling." (Shain Dep. at 158:14–158:23; 161:24–162:2.) But here Cleve was not referring to control of his financial decisions. Rather, he was referring to the fact that she was unreasonably jealous and concerned that he was interested in other women. (*Id.* at 158:17–23.) Cleve also points out that he made Tami a joint owner of his checking account (Pl. PFOF ¶17), but he does not claim that she withdrew any money from that account or otherwise abused the trust that he placed in her when he made her a joint owner of that account. Finally, Cleve points to testimony from his personal attorney, who observed that Cleve seemed reluctant to make decisions concerning his property without consulting Tami. (Tira Dep. at 48:18–51:12.) Again, however, it is not improper for one cohabitating, long-term romantic partner to influence the financial decisions of the other. Thus, this evidence does not suggest that Tami unduly influenced Cleve or breached any fiduciary duty she may have owed to him. Accordingly, Tami is entitled to summary judgment on Cleve's claims for undue influence and breach of fiduciary duty.

14

## C. Unjust Enrichment

Cleve's claim for unjust enrichment is no different than his claim for recovery gifts made in contemplation of marriage. He contends that because he made Tami a co-owner of the Wisconsin home and transferred the LLC interest to her in contemplation of marriage, it would be unjust to let her retain those gifts now that the marriage is off. The Wisconsin courts recognize that an action for recovery of a gift in contemplation of marriage is grounded in unjust enrichment. *See Brown*, 127 Wis. 2d at 327–28. Thus, I will treat Cleve's claim for unjust enrichment the same as his claim for recovery of gifts in contemplation of marriage: Tami's motion for summary judgment on this claim is denied with respect to the Wisconsin property and the six rental properties but granted with respect to the miscellaneous other gifts Cleve made to her during the parties' relationship.

## D. *Lis Pendens*

In her motion for summary judgment, Tami requests an order "releasing and discharge[ing]" the *lis pendens* that Cleve filed on her two Laura Lane properties and on her Newark property. (Mot. for Summ. J. at 1, ECF No. 97.) However, Tami does not connect this request to any cause of action alleged in her counterclaim. The counterclaim does plead a cause of action for slander of title, but Tami has not moved for summary judgment in her favor on that claim or shown that the order she requests would be an appropriate remedy for that claim. Nonetheless, Cleve has not argued that the court lacks the power to enter an order discharging the *lis pendens* or that Tami's request for such an order in her motion for summary judgment is procedurally improper. Therefore, I will address her request for such an order. Because the *lis pendens* were recorded in Illinois, I will apply Illinois law.

15

Under Illinois law, a *lis pendens* serves as constructive notice to all persons who may subsequently acquire an interest in real property that a lawsuit concerning the property is pending and that such persons take their interest in the property subject to the lawsuit. *See* 735 Ill. Comp. Stat. 5/2-1901. In the present case, as discussed above, the real property primarily involved in this suit is the Wisconsin property and the six Coal City rental properties. Tami does not contend that any *lis pendens* filed with respect to those properties is improper. However, she contends that Cleve improperly recorded *lis pendens* on her two Laura Lane properties and her Newark property. Tami owns these three properties in her own name and acquired them using her own funds. She states in her affidavit that she has not used any rental income from the Coal City rental properties to pay expenses associated with these properties. However, she used the rental properties as collateral to obtain her mortgage on the Newark property, and that loan remains outstanding. Still, she maintains, this fact does not entitle Cleve to an equitable interest in the Newark home.

Cleve argues that the *lis pendens* on Tami's homes are proper because his gifts to her have been incorporated into those homes and therefore he has a claim for a constructive trust on them. To the extent that Cleve is referring to the home-improvement work that he performed on the 715 Laura Lane property or any gifts of money that he made to Tami during their relationship that she used to make improvements to her homes, this argument fails. As explained above, Cleve has not presented evidence that would allow a reasonable jury to conclude that these gifts were anything other than absolute gifts that he bestowed on Tami. Thus, Cleve has no claim to a constructive trust on any of Tami's homes based on these gifts.

Cleve also contends that Tami may have used the rents she collected on the six Coal City properties to pay expenses associated with her three homes, and that her doing so created a constructive trust on the homes. However, Tami, in her affidavits, states that she never used the rental income on her Coal City properties to pay for expenses associated with either of the Laura Lane homes or the Newark home. (Zingre Aff. ¶ 28; Zingre Supp. Aff. ¶¶ 4, 19.) Cleve denies that this is true, but the only evidence he submits is his own deposition testimony in which he speculates that Tami could not afford the properties unless she used the rental income from the Coal City properties to pay for them. (Shain Dep. at 14610–147:7.) This speculation is not admissible evidence, and therefore Cleve has not created a triable issue of fact as to whether Tami used the rents from the Coal City properties to pay for her other properties.

Finally, I note that Cleve does not argue that Tami's using the Coal City properties as security for the loan on the Newark property grants him any form of equitable interest in the Newark property or otherwise makes the *lis pendens* on that property proper. (Br. in Opp. at 17, ECF No. 105.) Moreover, I do not see how it could make the *lis pendens* proper.

In short, there is no basis for the *lis pendens* on Tami's Laura Lane properties or her Newark property. Thus, they should be discharged. Moreover, the Illinois *lis pendens* statute allows me to make a finding that specific performance of the subject properties is not necessary for final judgment in the lawsuit and to "authorize the making of a deed, mortgage, lease or other conveyance of any or all of the real estate affected or involved." 735 Ill. Comp. Stat. 5/2-1901 (fourth par.). The effect of such an order is to allow the real estate to be conveyed to, or encumbered by, a third party without that party being bound by the result of the lawsuit. *Id.* Here, I find that specific performance of the Laura Lane

17

and Newark properties is not necessary for final judgment in this action, and therefore I will enter an order authorizing the making of a deed, mortgage, lease or other conveyance of any or all of those properties.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendant's motion for summary judgment (ECF No. 97) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is granted on all of plaintiff's claims except his claims for return of gifts in contemplation of marriage and unjust enrichment insofar as those claims concern the Wisconsin property and the six Coal City rental properties.

**IT IS FURTHER ORDERED** that the plaintiff must discharge the *lis pendens* he filed on the Laura Lane properties and the Newark property.  Moreover, defendant is authorized to immediately make a deed, mortgage, lease, or other conveyance of any or all of the parcels of real estate located at 675 Laura Lane or 715 Laura Lane in Diamond, Illinois, and 8845 Kimball Court, Newark, Illinois.

Dated at Milwaukee, Wisconsin, this 1st day of November, 2018.

 s/Lynn Adelman  
LYNN ADELMAN  
District Judge